UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RICHARD WILLIAMS,

                                        Plaintiff,

                                                                9:11-CV-1158
v.                                                              (TJM/TWD)

MARK LEONARD, IMAM
KHALIL ABDUL KABIR,
T. LAVALLEY, JOE HASKELL,

                                        Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

RICHARD WILLIAMS, 95-A-7827
Plaintiff *pro se*
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

HON. ERIC T. SCHNEIDERMAN                        KRISTA A. ROCK, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## **<u>REPORT-RECOMMENDATION</u>**

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy,

Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

Plaintiff Richard Williams, an inmate at Great Meadow Correctional Facility, alleges that

Defendants violated his constitutional rights by (1) refusing to allow him to wear his pants at the

length required by his Muslim faith; (2) preventing him from celebrating the holy day of Eid el-Adha with family members; and (3) raising meal prices for the guests of Muslim inmates. (Dkt. No. 1.) Plaintiff seeks damages and injunctive relief allowing Islamic inmates within the New York Department of Corrections and Community Supervision ("DOCCS") to (1) wear their pants above their ankles; (2) be allowed family participation in the celebrations of both Eid al-Fitr and Eid el-Adha; and (3) pay the same meal prices that other religions and organizations pay for their visitors' meals. (Dkt. No. 1 at 13.)

Defendants now move to dismiss the complaint. (Dkt. No.12-1.) Plaintiff has opposed the motion. (Dkt. No. 14.) Defendants have filed a reply. (Dkt. No. 15.) Plaintiff has filed a sur-reply, which the Court accepted for consideration. (Dkt. No. 16.) For the reasons that follow, I recommend that Defendants' motion be granted in part and denied in part.

## I. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial

experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## II.    ELEVENTH AMENDMENT IMMUNITY

In the caption of the complaint, Plaintiff names each Defendant in his individual and official capacity. (Dkt. No. 1 at 1.[1]) Defendants move to dismiss Plaintiff's official capacity claims, arguing that they are barred by the Eleventh Amendment. (Dkt. No. 12-1 at 4.) For the reasons discussed below, Defendants are correct as to Plaintiff's claims for damages but incorrect as to Plaintiff's claims for injunctive relief.

The Eleventh Amendment bars suits for damages against state officials acting in their official capacities. *See Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that

---

[1]    All citations to page numbers in this Report-Recommendation refer to the page numbers assigned by the Court's electronic filing system.

3

the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities."). All DOCCS employees are state officials for the purposes of the Eleventh Amendment. *See e.g. Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002); *Tolliver v. NY State Correctional Officers*, No. 99 CIV 9555, 2000 WL 1154311, at *2 (S.D.N.Y. Aug. 14, 2000) ("All of the defendants in this case are state officials because they are employees of the New York State Department of Correctional Services."). Here, Defendants are all DOCCS employees. (Dkt. No. 1 at 2-3.) Thus, the Eleventh Amendment bars claims for damages against them in their official capacities.[2] Therefore, I recommend that the Court grant Defendants' motion to dismiss Plaintiff's official capacity claims for damages.

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted). Here, better pleading could not cure the defect with Plaintiff's claims for damages against Defendants in their official capacities. Therefore, I recommend that the Court dismiss these claims without leave to amend.

---

[2]    Defendants are not, however, entitled to Eleventh Amendment immunity for the damages claims against them in their individual capacities. *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988) ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity.").

The Eleventh Amendment does not, however, bar Plaintiff's claims for injunctive relief against Defendants in their official capacities. Under the doctrine established in *Ex parte Young*, "[a] plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint (a) alleges an ongoing violation of federal law; and (b) seeks relief properly characterized as prospective." *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (punctuation omitted). Here, as discussed more fully below, Plaintiff alleges ongoing violations of federal law and seeks prospective injunctive relief. Therefore, I recommend that the Court deny Defendants' motion to dismiss Plaintiff's official capacity claims for injunctive relief.

## III.    CLAIMS REGARDING PANTS LENGTH

A large portion of Plaintiff's complaint involves his efforts to wear his pants above his ankles. Plaintiff claims that Defendants' refusal to allow him to wear his pants above his ankles violates his Islamic beliefs. These allegations implicate both the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Defendants have not addressed the merits of Plaintiff's claim under either the First Amendment or RLUIPA. Defendants do argue, however, that they are entitled to qualified immunity because at "the time the defendants acted, there was no clearly established decisional law of the Supreme Court or of the Second Circuit that confirmed the right of a Muslim inmate to wear his pants above his ankles . . . ." (Dkt. No. 12-1 at 8.[3]) For the reasons discussed below, I recommend that the Court dismiss Plaintiff's claims for damages regarding the issue of his pants length without leave to

---

[3]    I note that this single sentence, which cites no authority, is the only substantive reference in Defendants' entire memorandum of law to Plaintiff's claim regarding his pants length.

amend and direct Defendants to respond to Plaintiff's claims under the First Amendment and RLUIPA for injunctive relief.

## A.    Facts

Plaintiff is a devout Muslim. (Dkt. No. 1 at 4.) Plaintiff alleges that his religion requires him to wear his pants above his ankles. *Id*. at 5. He alleges that it is not permissible for Muslims to wear garments below the ankles. *Id*. at 5-6. Under DOCCS official policy, however, inmates are not allowed to wear their pants above the ankles. *Id*. at 52.

On June 1, 2007, an unnamed correction officer stopped Plaintiff and said that he was "making a strong statement about being in a gang because [his] pant legs were above [his] ankles." *Id.* at 51. Plaintiff filed a grievance regarding the incident. *Id.*

A hearing was conducted regarding the grievance. *Id.* at 53. Plaintiff alleges that non-defendant Sergeant Williams stated at the hearing that he had discussed the issue of pants length with non-defendant Imam Elmi. *Id.* After that discussion, Sergeant Williams understood that Muslims are required to wear their pants above the ankles. *Id.*

At the hearing, Plaintiff and the grievance committee discussed alternatives that would allow Plaintiff to practice his religious beliefs without disrupting the order of the facility. *Id.* The alternatives considered were: (1) giving a list of Muslim inmates to the State Shop Supervisor to allow alterations to pants; (2) requiring Muslim inmates to submit a written request for alterations; (3) giving Muslim inmates wearing their pants above their ankles a stamped identification card indicating their religion. *Id.*

Plaintiff's grievance was denied on June 25, 2007. *Id*. at 53. Plaintiff appealed the decision. *Id*. Plaintiff's appeal was denied at the superintendent level on July 6, 2007. *Id.* at 52.

Plaintiff appealed that decision. *Id*. On August 1, 2007, the Central Office Review Committee ("CORC") unanimously denied Plaintiff's appeal. *Id*. at 54. CORC stated "that inmates are not permitted to alter state issue clothing. Any inmate altering clothing will be held accountable for any portion of the replacement costs through department restitution policy. CORC advises the grievant to address any concerns regarding his religion to facility Imam." *Id*.

It is unclear from the complaint precisely what occurred over the next two years. However, sometime before the second half of 2009, CORC determined that Muslims could wear their pants above their ankles during religious services and prayer. *Id*. at 60.

On August 24, 2009, Defendant Imam Khalil Abdulkhabir[4] wrote to Plaintiff. *Id.* at 20. Defendant Abdulkhabir stated that "after consultation with other Imams" it had been decided "that the pant length can be at the ankle bone." *Id*. This position had been submitted for departmental review and a response was pending. *Id*. Plaintiff responded to the letter on October 28, 2009. *Id*. at 28. Plaintiff stated that the position described by Defendant Abdulkhabir "is going against what the Prophet . . . said." *Id*. Although it is not entirely clear from the letter, it appears that Plaintiff believes that a pant length *at* the ankle bone does not satisfy the religious requirement that Muslims wear their pants *above* their ankles. *Id*.

On November 30, 2009, non-defendant Kenneth Pearlman, the Deputy Commissioner of Program Services for DOCCS, wrote to Plaintiff. *Id*. at 60. He noted that Plaintiff could wear his pants above his ankles during religious services and prayers. *Id*. He stated that the Office of Ministerial, Family, and Volunteer Services was reviewing the issue, but that Plaintiff must

---

[4] Defendant Abdulkhabir's name is spelled in different ways throughout the record. I have used the spelling from the August 24, 2009, letter to Plaintiff, which was prepared by Defendant Abdulkhabir and is presumably correct.

comply with all DOCCS policies regarding clothing and dress pending that review.  *Id*.

Plaintiff responded to Mr. Pearlman's letter on December 17, 2009.  *Id*. at 59.  Plaintiff inquired who had told Mr. Pearlman that Muslims were only required to wear their pants above their ankles during religious services and prayers.  *Id*.  Plaintiff stated that Defendant Abdulkhabir "told us he never told anyone at ministerial services that."  *Id*.

On January 2, 2010, Plaintiff filed another grievance requesting that he be allowed to wear his pants above his ankle.  *Id*. at 15.  Plaintiff explained that based on the letter from Mr. Pearlman he "went to the state shop and had my pants done in accordance with the above-mentioned letter."  *Id.*  Plaintiff explained that on January 1, 2010, he was "threatened with keeplock for complying with the decision that was sent from CORC until the matter of wearing the pants in accordance to our religion is resolved." *Id*.  Plaintiff noted that the only time he wore his pants above the ankle was during religious services and prayers. *Id.*  Plaintiff requested that no retaliatory actions be taken in connection with his grievance.  *Id*.

On February 9, 2010, Defendant Superintendent LaValley wrote to Plaintiff.  *Id*. at 55.  Defendant LaValley stated:

> As you are aware, based upon the letter sent to you dated August 24, 2009, from Imam Khalil Abdulkhabir, "Your pant length at the ankle bone which does satisfy the religious requirement is discreet and maintains the integrity of our faith practice."
>
> You are expected to follow the established rules.  Should the rules change, you will be informed.
>
> I have enclosed a photograph that shows the ankle bone.  Your pant length can not be above the ankle bone . . .
>
> A copy of the photograph will be made available to security staff in an effort to ensure compliance with this policy.

*Id.* It is not clear what document Defendant LaValley was quoting because the copy of the letter from Defendant Abdulkhabir dated August 24, 2009, attached to the complaint did not contain the quoted language. *Id.* at 20.

On February 25, 2010, non-defendant Imam Elmi wrote to the supervisor of the Inmate Grievance Resolution Committee. (Dkt. No. 1 at 62.) He stated:

> The religion of Islam commands that Muslims should not wear their garments below the ankle bone. This matter is under review by central office, the latest correspondence from central office was "inmates can wear their pants at the ankle bone level." Until further directions, inmates would be able to hem their pants at the ankle bone through the facility state shop.

*Id.*

On March 16, 2010, Defendant LaValley responded to a grievance filed by Plaintiff on February 24, 2010. *Id.* at 25. Defendant LaValley stated:

> Based on a recommendation from the Office of Ministerial Services, inmates of the Islamic or Muslim faith need only wear their pants raised during services or prayer. At all other times, the pant length must be at the ankle bone. This satisfies the religious requirement, is discreet, and maintains the integrity of the faith practice. If grievant takes issue with this determination, he will need to address this matter with the courts.

*Id.* Plaintiff appealed Defendant LaValley's decision. *Id.* CORC upheld Defendant LaValley's decision on May 5, 2010. *Id.* at 26. CORC cited its 2009 decision, which held that Muslim inmates' pants "need to be raised only during services and prayer." *Id.*

On March 22, 2010, Plaintiff wrote a letter to the grievance office regarding religious harassment. *Id.* at 16. Plaintiff explained that he was leaving the school building after a program when the gate officer "denied me 2:30pm rec. because he said my pants were too high." *Id.*

Plaintiff explained he had been wearing the same pants "going to chow and morning program and leaving the school building at 10:30am. He did not pull me to the side and say anything." *Id*. Plaintiff asked that the gate officer be given a copy of the letter from CORC explaining that his pants could be worn at the ankle bone. *Id*. Plaintiff requested that he be allowed to wear his pants in accordance with the CORC standard and requested that no retaliatory actions be taken against him because of the grievance. *Id*.

On March 31, 2010, Plaintiff filed another grievance. *Id*. at 18. Plaintiff stated that Defendant Abdulkhabir had compromised the Islamic religion by stating that it was acceptable for pants to be worn at the ankle bone. *Id*. Plaintiff requested that Defendant LaValley and his Deputy of Security speak to Imam Elmi about "where does the ankle start" for the purposes of the Muslim faith. *Id*. Plaintiff requested that Defendant LaValley withdraw the letter he was circulating to his staff. *Id*. Plaintiff asked who informed DOCCS officials that Muslims were only required to wear their pants raised during services and prayer. *Id*. Plaintiff noted that Defendant Abdulkhabir told him that he had never said that either verbally in writing. *Id*. Plaintiff asked that he be allowed to wear his pants "at the tip of my boots until this matter is tak[en] care of." Finally, Plaintiff asked that "staff stop the harassment when I wear my pants on Friday to services . . . I wear my pants in accordance with . . . the C.O.R.C. statement." *Id*.

### B. Statute of Limitations

Defendants move to dismiss any of Plaintiff's claims that involve events that occurred before September 28, 2008, as barred by the statute of limitations. (Dkt. No. 12-1 at 5.) For the reasons discussed below, I recommend that the Court reject this argument at this point in the litigation.

Claims arising under 42 U.S.C. § 1983 are governed by state statutes of limitations. *Wilson v. Garcia*, 471 U.S. 261, 266-267 (1985). In New York, such claims are governed by the general three-year limitations period governing personal injury claims. *Owens v. Okure*, 488 U.S. 235, 251 (1989). Accrual of the claim, however, is a question of federal law. *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997). Under federal law, generally, a claim arising under 42 U.S.C. § 1983 "accrues" when the plaintiff "knows or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long Island Beach*, 296 F.3d 76, 80 (2d Cir. 2002).

"The continuing violation doctrine is an exception to the normal knew-or-should-have-known accrual date. When the plaintiff brings a Section 1983 claim challenging a discriminatory policy, commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (citations and punctuation omitted).

Here, Plaintiff signed his complaint on September 20, 2011. (Dkt. No. 1.) Defendants note that the "complaint refers to 'numerous occasions from 2007 until Present' during which plaintiff was 'not allowed to wear his pants above the ankles' and was 'stopped and ordered to wear his pants below the ankle bone.'" (Dkt. No. 12-1 at 6, quoting Dkt. No. 1 ¶¶ 8-9.) Unless the continuing violation doctrine applies, only claims that arose after September 20, 2008, are timely. Defendants argue that the claims are untimely. *Id*. Defendants argue that the continuing violation doctrine does not apply because Plaintiff "cannot establish the underlying unconstitutional policy necessary for him to benefit from" the doctrine and "does [not] provide enough details about the alleged actions to determine whether the acts are sufficiently continuous in time with one another or other timely acts to invoke the continuing violation doctrine." (Dkt.

No. 15 at 2.)

For the purposes of this motion only, I find that the continuing violation doctrine applies. Plaintiff's complaint challenges the policy prohibiting Muslims from wearing their pants above their ankles. As discussed more fully below, Plaintiff has alleged facts plausibly suggesting that this policy violated his rights under the First Amendment and RLUIPA. Reading the complaint in the light most favorable to Plaintiff, it appears that Defendants LaValley and Abdulkhabir acted in support of the policy both before and during the statute of limitations period. The policy continued at least until the filing of the complaint. Thus, the last allegedly discriminatory acts in furtherance of the policies occurred within the limitations period. Therefore, I recommend that the Court reject Defendants' statute of limitations argument at this time.

### C.     First Amendment

#### 1.     Merits

Plaintiff claims that Defendants violated his First Amendment right to exercise his religion by refusing to allow him to wear his pants above his ankle. (Dkt. No. 1 at 4.) Defendants have not addressed the merits of this claim. For the reasons discussed below, I find that Plaintiff has alleged facts plausibly suggesting that Defendants violated his First Amendment rights.

Prisoners retain some measure of the constitutional right to the free exercise of religion guaranteed by the First Amendment. *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). However, due to the unique concerns of the prison setting, prisoners' free exercise rights must be balanced against the interests of prison officials engaged in the complex duties of administering the penal system. *Id*. Thus, a prison regulation or individualized decision to deny a prisoner the

ability to engage in a religious exercise "is judged under a reasonableness test less restrictive than that ordinarily applied [to burdens on fundamental rights]: a regulation that burdens a [prisoner's] protected right passes constitutional muster if it is reasonably related to legitimate penological interests." *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (punctuation omitted).

To establish a free exercise claim, a prisoner "must show at the threshold that the disputed conduct substantially burdens[5] his sincerely held religious beliefs." *Salahuddin*, 467 F.3d at 274-75 (citing *Ford*, 352 F.3d at 591). A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature[6]. *Ford*, 352 F.3d at 590. Here, Defendants do not dispute that Plaintiff sincerely believes that his religion requires him to wear his pants above the ankle at all times.

A prisoner's sincerely held religious belief is "substantially burdened" "where the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly*

---

[5] Although the Second Circuit has applied the "substantial burden" test in its most recent prison free exercise cases, it has done so while explicitly refusing to adopt or endorse the test. "The *Ford* court noted that the Circuits apparently are split over whether prisoners must show a substantial burden on their religious exercise in order to maintain free exercise claims. Nevertheless, the *Ford* court held that since the plaintiff had not challenged the application of the substantial burden requirement, the court would proceed as if the requirement applied. Likewise, the *Salahuddin* court noted that '[r]esolution of this appeal does not require us to address Salahuddin's argument that a prisoner's First Amendment free-exercise claim is not governed by the 'substantial burden' threshold requirement,' because defendants 'never proceed to argue that we should find any particular burdened religious practice to be peripheral or tangential to [plaintiff's] religion.' The court then proceeded as if the substantial burden requirement applied." *Pugh v. Goord*, 571 F. Supp. 2d 477, 497 n.10 (S.D.N.Y. 2008)(citations and some punctuation omitted).

[6] However, in some cases "an asserted belief might be so bizarre, so clearly nonreligious in motivation, so as not to be entitled to protection." *Frazee v. Illinois Dept. Of Employment Security*, 489 U.S. 829, 834 n.2 (1989).

*v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) (punctuation omitted) (holding that Rastafarian prisoner's sincerely held religious belief that he was prohibited from submitting to a test for latent tuberculosis was "substantially burdened" where he was forced to choose between "submitting to the test or adhering to [his] beliefs and enduring medical keeplock."). Here, taking the allegations of the complaint as true, Defendants substantially burdened Plaintiff's sincere religious belief. From 2007 through 2009, Plaintiff was never allowed to wear his pants at the length mandated by his faith. Sometime before November 2009, CORC determined that Muslim inmates could wear their pants above their ankles, but only during religious services and prayers. Muslims were still required to wear their pants at regulation length at other times. In February 2010, Defendant LaValley stated that Plaintiff could wear his pants at the ankle bone. He would not allow Plaintiff to wear his pants *above* his ankle bone, as mandated by his religion. On more than one occasion Plaintiff was "harassed" by guards about the length of his pants. Therefore, Plaintiff has alleged facts plausibly suggesting that the state put substantial pressure on him to modify his behavior and to violate his beliefs by prohibiting him from wearing his pants as mandated by his religion.

Once a plaintiff establishes that a sincerely held religious belief has been substantially burdened, "[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (quoting *Ford*, 352 F.3d at 595) (punctuation omitted). When determining whether the burden imposed by the defendants is reasonable rather than irrational, a court evaluates four factors: (1) whether the action had a valid, rational connection to a legitimate governmental objective; (2) whether the

prisoner has an alternative means of exercising the burdened right; (3) the impact on guards, inmates, and prison resources of accommodating the right; and (4) the existence of alternative means of facilitating the plaintiff's exercise of the right that have only a *de minimis* adverse effect on valid penological interests. *Salahuddin*, 467 F.3d at 274-75.

Defendants, who did not address the First Amendment merits of Plaintiff's claim regarding his pants length, have not identified any legitimate penological reason for their refusal to allow Plaintiff to wear his pants at the length mandated by his religion. Thus, Defendants have not met their burden. Therefore, I find that, as currently pleaded and briefed, the complaint alleges facts plausibly suggesting that Defendants substantially burdened Plaintiff's sincere religious belief without a legitimate penological interest.

### 2.    Qualified Immunity

Defendants argue that they are entitled to qualified immunity. (Dkt. No. 12-1 at 9.) Plaintiff argues that Defendants are not entitled to qualified immunity. (Dkt. No. 14 at 9-10.) For the reasons discussed below, I find that Plaintiff's First Amendment claim for damages regarding his pants length is barred by the doctrine of qualified immunity, but recommend that Defendants be directed to respond to Plaintiff's request for injunctive relief.

Defendants in civil rights actions are entitled to qualified immunity from civil damages "unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Williams v. Smith*, 781 F.2d 319, 322 (2d Cir. 1986) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)). Thus, the qualified immunity inquiry in a prisoner civil rights case involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff, establish a constitutional violation";

and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004) (citations omitted), *accord*, *Higazy v. Templeton*, 505 F.3d 161, 169, n.8 (2d Cir. 2007) (citations omitted).

Here, as discussed above, the facts viewed in the light most favorable to Plaintiff establish a consittuional violation. The issue, then, is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted.

In determining whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted, courts in this circuit consider three factors: (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful. *Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) (citations omitted), *cert. denied*, 503 U.S. 962 (1992). *See also Pena v. DePrisco*, 432 F.3d 98, 115 (2d Cir. 2005); *Clue v. Johnson*, 179 F.3d 57, 61 (2d Cir. 1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir. 1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir. 1996); *Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d Cir. 1995); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994); *Calhoun v. New York State Division of Parole*, 999 F.2d 647, 654 (2d Cir. 1993).

In determining whether the right in question in a particular case was defined with reasonable specificity, courts must avoid "framing the constitutional right at too broad a level of generality." *Redd v. Wright*, 597 F.3d 532, 536 (2d. Cir. 2010). Characterizing the right at question in a prisoner's First Amendment religion case as the right "not to be subjected to

punishment . . . as a consequence of his religious beliefs," for example, is not "reasonably specific." *Id.* Thus, the right at question here is the right for Muslim inmates to wear their pants above their ankles at all times. The decisional law of the Supreme Court and the Second Circuit does not support the existence of the right in question. At the time of the Defendants' actions there were no cases dealing substantively with the issue of the length of Muslim inmates' pants. Under preexisting law a reasonable Defendant would not have understood that his or her acts were unlawful. Further, it was objectively reasonable for Defendants at the time of the challenged action to believe their acts were lawful. Defendants conferred with the Great Meadows Imam and outside Imams regarding the policy and apparently received their support. Thus, it would not be clear to a reasonable officer that his conduct was unlawful at the time.

Accordingly, I recommend that the Court find that Defendants are entitled to qualified immunity from the First Amendment claim against them for civil damages regarding the length of Plaintiff's pants and dismiss that claim accordingly. Because better pleading would not cure this defect, I recommend that the Court dismiss the claim without leave to amend.

Defendants are not, however, entitled to qualified immunity from Plaintiff's claims for injunctive relief. The defense of qualified immunity does not bar claims for declaratory or injunctive relief. *Sudler v. City of New York*, 689 F.3d 159, 177 (2d Cir. 2012). Here, Plaintiff is seeking an injunction authorizing him to wear his pants above his ankles. (Dkt. No. 1 at 13.) Therefore, I recommend that the Court direct Defendants to respond to the First Amendment claim for injunctive relief regarding Plaintiff's pants.

**D.    RLUIPA**

Although the complaint does not explicitly mention RLUIPA, Plaintiff's claim regarding

17

the length of his pants implicates that statute. Defendants have not addressed this claim. I will address it sua sponte pursuant to 28 U.S.C. § 1915(e)(2)(iii).

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution[7] . . . unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a).

As discussed above, Plaintiff has alleged facts plausibly suggesting that Defendants have placed a substantial burden on his religious exercise. Moreover, Defendants have not, at this point in the litigation, demonstrated what governmental interest supports their policy regarding pant length. Therefore, Plaintiff has alleged facts plausibly suggesting that Defendants violated his rights under RLUIPA.

Defendants are, however, entitled to qualified immunity from Plaintiff's claim for damages. As discussed above, there is no authority from the Second Circuit or the Supreme Court supporting the right of Muslims inmates to wear their pants above their ankles. Therefore, I recommend that the Court (1) dismiss Plaintiff's RLUIPA claim for damages regarding the length of his pants without leave to amend; and (2) direct Defendants to respond to the RLUIPA claim for injunctive relief regarding the length of Plaintiff's pants.

---

[7]     An "institution" is any facility or institution that is "owned, operated, or managed by, or provides services on behalf of any State" and is, *inter alia*, "for persons who are mentally ill, disabled, or retarded, or chronically ill or handicapped" or "a jail, prison, or other correctional facility." 42 U.S.C. § 1997(1) (2010).

## IV.    FAMILY PARTICIPATION IN EID EL-ADHA

Plaintiff alleges that Defendants Mark Leonard and Imam Abdulkhabir violated his constitutional rights by refusing to allow family members to participate in one of the two Muslim holy days, or Eids.  (Dkt. No. 1 at 8.)  Defendants move to dismiss this claim.  (Dkt. No. 12.)  For the reasons discussed below, I recommend that the Court (1) dismiss any claim regarding a generalized right to visitation without leave to amend; (2) dismiss Plaintiff's First Amendment, RLUIPA, and equal protection claims for damages regarding this issue without leave to amend; (3) direct Defendants to respond to Plaintiff's First Amendment and RLUIPA claims for injunctive relief; and (4) direct Defendants to respond to Plaintiff's equal protection claim for injunctive relief.

### A.    Facts

On December 8, 2008, Plaintiff filed a grievance regarding a new DOCCS policy barring family participation in the celebration of Eid el-Adha.  (Dkt. No. 1 at 63.)  Plaintiff asserted that Defendant Mark Leonard, the Director of Ministerial Services, was responsible for the new policy.  *Id*.  Plaintiff stated that the new policy violated his First Amendment rights because the Muslim faith requires that the holy days of Eid el-Adha and Eid al-Fitr be marked with prayer and sermon, family attendance, and "joyous festivities."  *Id*.  Plaintiff noted that DOCCS policy still allowed family participation in Eid el-Fitr.  *Id*.  Plaintiff stated that the new policy violated the Equal Protection Clause because Native Americans were allowed to have family members participate in nine different holy days.  *Id*. at 63-64.  Plaintiff requested that both of the Eids be designated as family events.  *Id*. at 64.

On December 9, 2008, the inmate grievance program ("IGP") supervisor sent non-defendant Imam Elmi a letter regarding Plaintiff's grievance. *Id*. at 65. Imam Elmi was asked to attempt to informally resolve the grievance or provide the IGP with information, facts, or documentation regarding the issues raised in the grievance. *Id.*

On January 8, 2009, an investigative report was prepared regarding Plaintiff's grievance. *Id*. at 67. The investigative report noted that Imam Elmi confirmed that in past years family designations were given to both Eid holidays. *Id.* However, the new policy was that there would be only one family event allowed for each religious group with the exception of Native Americans. *Id.*

A hearing was conducted regarding Plaintiff's grievance on January 9, 2009. *Id*. at 66. The two inmate representatives on the committee recommended granting Plaintiff's grievance. They stated:

> The evidence provided to support this grievance clearly substantiates that all Islamic Religious Eid Events (Eid Al-Fitr and Eid Al-Adhaa) have been afforded the privilege to have immediate family member attend these Events as a <u>Religious Holy Observance</u> in accordance to Islamic Religious practices . . . <u>Which specifically requires that all family members are required to observe the Eid Prayers in a community prayer setting in accordance to Islamic Holy Tradition</u> . . . Prayer, Sermon, and Family Attendance in conjunction with Festive Celebrations . . . Has always been Officially Recognized by The New York State Department of Correctional Services and Ministerial Services . . . For almost 20 years! Therefore, in light of this significant fact, it appears there exists "<u>No Penological Interest</u>" that would support the discontinuation of family members to continue to attend this family event! Wherefore, in conclusion based on this long existing Departmental Observance, this grievance should be granted without prejudice!

*Id*. (ellipses, capitalization, and emphases in original).

The staff representatives on the committee recommended that the grievance be denied "to the extent that per policy and procedures one family event is allowed per religious organization." *Id*.

After the hearing, the IGRC Office sent Plaintiff a letter informing him that no decision had been reached on his grievance because the committee was deadlocked. *Id*. at 68. Accordingly, Plaintiff's grievance was automatically forwarded to the superintendent's office for review. *Id*.

On January 22, 2009, Plaintiff's grievance was denied at the superintendent's level.[8] *Id*. at 69. The denial stated that "Central Office allows one family event per year, with the exemption of the Native American faith group. A Native American religious ceremony is observed with a family meal. The other religions do not require a family meal as part of the religious observance." *Id*.

On August 4, 2009, Plaintiff filed another grievance regarding the Eid celebrations. *Id*. at 70-75. He expressed again that family participation in both holy days is mandated by the Islamic faith and that it was unfair for Native Americans to be allowed nine family holidays while Muslims received only one. *Id*.

On August 24, 2009, Plaintiff received a letter from Defendant Abdulkhabir. *Id.* at 20. Defendant Abdulkhabir noted that family participation in Eid celebrations is stressed, especially for Eid el-Adha. *Id*. However, he noted that the growing number of religions caused the

---

[8] Defendant LaValley's signature does not appear on the form. The appeal appears to have been assigned to a subordinate.

department to limit the number of family celebrations. *Id.*

In June 2010, Plaintiff filed an Article 78 proceeding in Albany County Supreme Court regarding this issue. *Id*. at 3-4. The proceeding was dismissed on procedural grounds in November 2010. *Id*. at 4.

## B. Right to Visitation

Defendants argue that the claim regarding family participation in Eid el-Adha must be dismissed because Plaintiff has no constitutional right to visitation. (Dkt. No. 12-1 at 8-9.) To the extent that Plaintiff's complaint raises a claim regarding a generalized claim to visitation, Defendants are correct.

Although inmates do not relinquish their constitutional rights when imprisoned, implicit with incarceration is the fact that confinement imposes a limitation on privileges and rights. *See, e.g., Sandin v. Conner,* 515 U.S. 472, 485 (1995); *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125–26, 97 S.Ct. 2532, 2537–38, 53 L.Ed.2d 629 (1977) (holding that one of the more obvious constitutional rights curtailed by confinement is the right to freely associate with those outside the penal institution). An inmate only "retains those First Amendment rights that are not inconsistent with his status as a prisoner." *Smith v. Coughlin,* 748 F.2d 783, 788 (2d Cir.1984). Visitation restrictions do not violate the Constitution unless they have no reasonable relationship to a legitimate penological goal. *See Overton v. Bazzetta*, 539 U.S. 126, 141-42 (2003); *Turner v. Safley*, 482 U.S. 78, 89 (1987). Restrictions on the time, place and manner of visiting will generally be upheld by courts. *See Overton*, 539 U.S. 126; *Martin v. Tyson*, 845 F.2d 1451, 1455-56 (5th Cir. 1988). In *Pell v. Procunier,* 417 U.S. 817, 826

(1974), the Supreme Court addressed a First Amendment freedom of association issue within the prison context and concluded that security considerations and administrative difficulties justify limitations on visitation with inmates. *Henry v. Coughlin*, 940 F. Supp. 639, 642 (S.D.N.Y. 1996). Courts may give prisons great deference because the prisons may not have the resources to allow visits or ensure safe environments for visits as populations increase. *Overton*, 539 U.S. at 129.

Here, it does not appear that Plaintiff is asserting a generalized right to visitation. Rather it appears, as discussed below, that Plaintiff's complaint regarding family visitation for Eid el-Adha implicates religious issues. However, based on the authority discussed in the paragraph above, to the extent Plaintiff is claiming a generalized right to visitation it is recommended the claim be dismissed without leave to amend.

## C.    First Amendment

### 1.    Merits

Plaintiff claims that Defendants violated his First Amendment right to exercise his religion by refusing to allow Plaintiff's family to participate in Eid el-Adha celebrations. Defendants have not addressed the merits of this claim. The face of the complaint pleads facts plausibly suggesting that Defendants substantially burdened Plaintiff's sincere religious belief that family participation is required at Eid el-Adha. Defendants have not, at this stage in the litigation, identified a legitimate penological interest for the policy.[9] Therefore, I find that

---

[9]    Defendant Abdulkhabir stated in his August 24, 2009, letter to Plaintiff that the policy was due to the growing number of religions, but Defendants' memorandum of law does not mention or expand on that justification.

Plaintiff has stated a First Amendment claim that Defendants violated his right to exercise his religion.

2.      Qualified Immunity

Defendants claim they are entitled to qualified immunity because "there was no clearly established decisional law of the Supreme Court or of the Second Circuit that . . . allowed family visitation during the Eid prayer festival."  (Dkt. No. 12-1 at 10.)  Plaintiff argues that Defendants are not entitled to qualified immunity.  (Dkt. No 16 at 4-5.)

As discussed above, the facts viewed in the light most favorable to the Plaintiff establish a constitutional violation.  However, none of the Defendants violated clearly established rights of which a reasonable officer would have known.  There were no cases on point from the Supreme Court or the Second Circuit.  Further,  it was objectively reasonable for Defendants at the time of the challenged action to believe their acts were lawful.  Defendants conferred with the Great Meadows Imam when they implemented the policy.  Therefore, it would not be clear to a reasonable officer that his conduct was unlawful at the time.

Accordingly, Defendants are entitled to qualified immunity from suit regarding Plaintiff's First Amendment claim for damages regarding family participation in Eid el-Adha.  Therefore, I recommend that the Court dismiss that claim without leave to amend.  However, Defendants are not entitled to assert qualified immunity from the claim for injunctive relief regarding family participation in Eid el-Adha.  *Sudler*, 689 F.3d at 177.  Therefore, I recommend that the Court direct Defendants to respond to that claim.

### E.      RLUIPA

Plaintiff's claim regarding familial participation in Eid el-Adha implicates RLUIPA. Defendants have not addressed this claim.  I will address it sua sponte pursuant to 28 U.S.C. § 1915(e)(2)(iii).

As discussed above, Plaintiff has alleged facts plausibly suggesting that Defendants have placed a substantial burden on his religious exercise.  Moreover, Defendants have not, at this point in the litigation, demonstrated what governmental interest supports the policy regarding family participation in Eid el-Adha.  Defendants have thus failed to establish that the burden on Plaintiff was in furtherance of a compelling government interest or that it was the least restrictive means of furthering this compelling government interest.  Therefore, Plaintiff has alleged facts plausibly suggesting that Defendants violated his rights under RLUIPA.

However,  Defendants are entitled to qualified immunity from Plaintiff's RLUIPA claim for damages.  There is no authority from the Second Circuit or the Supreme Court supporting the right of Muslims inmates to have family present at all religious events.  Therefore, I recommend that the Court (1) dismiss Plaintiff's RLUIPA claim for damages regarding family participation in both Eid el-Adha without leave to amend; and (2) direct Defendants to respond to the RLUIPA claim for injunctive relief regarding family participation in Eid el-Adha.

### F.      Equal Protection

Plaintiff's claim regarding family participation in Eid el-Adha also implicates the Equal Protection Clause.  Defendants have not addressed the merits of this claim.  I will address it sua sponte pursuant to 28 U.S.C. § 1915(e)(2)(iii).

The Equal Protection Clause provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). Thus, a plaintiff asserting an equal protection claim must allege facts plausibly suggesting that (1) he was treated differently from similarly situated individuals; and (2) the defendants treated him differently due to his membership in a suspect class or inhibited his exercise of a fundamental right.

Plaintiff has alleged facts plausibly suggesting he was treated differently from similarly situated individuals. Plaintiff alleges that he and other Muslim inmates are unable to have family participate in both Eid events, while Native American inmates are allowed to have their family present for all of their events. (Dkt. No. 1 at 9.) Further, Plaintiff has alleged facts plausibly suggesting that Defendants inhibited him from exercising his fundamental right to freedom of religion. Thus, Plaintiff has alleged facts plausibly suggesting that Defendant violated his rights under the Equal Protection Clause of the Fourteenth Amendment. Therefore, I recommend that the Court direct Defendants to respond to the Fourteenth Amendment claim for injunctive relief regarding family participation at Eid Events.

For the reasons discussed above regarding the First Amendment and RLUIPA,

Defendants are entitled to qualified immunity from Plaintiff's equal protection claim for damages regarding family participation in Eid el-Adha. Therefore, I recommend that the Court dismiss the damages claim without leave to amend.

## V.    CLAIMS REGARDING MEAL PRICES

Plaintiff claims that Defendant Joe Haskell, the Director of the Division of Nutritional Services for DOCCS, discriminated against Muslims in general, and Plaintiff in particular, by overcharging for meals during family events and Eid feasts. (Dkt. No. 1 at 10.) Plaintiff claims that Defendant Haskell did so to retaliate against Plaintiff for "previous court litigation." *Id*.

### A.    Facts

Before May 2010, the price for Eid feast meals was $4.75 per adult and fifty cents per child. (Dkt. No. 1 at 11.) On July 10, 2010, Plaintiff learned that prices for Eid feasts had been set at $5.75 per person for both adults and children. *Id*. Plaintiff alleges that other religious communities pay only fifty cents per meal for visiting children's meals. *Id*. Plaintiff alleges that the meal price was increased only after he had "submitted litigation in the Courts in [r]egards to Islamic issues." *Id*.

### B.    Standing to Assert Claims on Behalf of Other Inmates

Plaintiff claims that Defendants "exercised discrimination and selective adverse treatment to the Muslim community which included Richard Williams by over charging for meals during Family Events and Eid feasts." (Dkt. No. 1 at 10.) Defendants argue that Plaintiff lacks standing to assert rights on behalf of other individuals. (Dkt. No. 12-1 at 6.) To the extent that Plaintiff is asserting claims on behalf of other individuals, Defendants are correct.

The doctrine of standing places limitations on which litigants are entitled to have their claims heard by the courts. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish constitutional standing, a plaintiff must have a case or controversy against the defendant. *Id.* Therefore, the plaintiff must allege a "personal stake in the outcome to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Baker v. Carr*, 369 U.S. 186, 204 (1962). A plaintiff must assert his or her own rights and not the legal rights or interests of a third party. *Tileston v. Ullman*, 318 U.S. 44 (1943).

Here, Plaintiff may be asserting a claim on behalf of other Muslim inmates and their guests. Plaintiff has standing only to assert claims on his own behalf. Therefore, I recommend that the Court grant Defendants' motion and dismiss Plaintiff's claims to the extent that they are asserted on behalf of other individuals. Because better pleading would not cure this defect, I recommend that the Court grant the motion without leave to amend.

## C.     Retaliation

Plaintiff claims that Defendants discriminated against him and the Muslim community by overcharging for guest meals during family events and Eid feasts in retaliation for Plaintiff's litigation regarding Muslim issues. *Id.* at 10. Defendants argue that Plaintiff's retaliation claim should be dismissed. (Dkt. No. 12-1 at 7-8.) Defendants are correct.

Claims of retaliation find their roots in the First Amendment. *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004). Central to such claims is the notion that in a prison setting, corrections officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights. *See Gill*, 389 F.3d at 381-383. Because of the relative ease

with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). As the Second Circuit has noted,

> [t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To state a retaliation claim under 42 U.S.C. § 1983, a plaintiff must allege facts plausibly suggesting that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff–namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action--in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d. Cir. 2001)).

Regarding the first element of Plaintiff's retaliation claim, "[p]risoners ... have a constitutional right of access to the courts and to petition the government for the redress of grievances." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). Defendants concede that the

filing of a lawsuit if a constitutionally protected activity sufficient to satisfy the first element of a retaliation claim. (Dkt. No. 12-1 at 7.)

Regarding the second element, Defendants argue that Plaintiff has not alleged facts plausibly suggesting any adverse action because "Plaintiff alleges that, in retaliation for filing litigation, Defendant Haskell raised the price that **guests of inmates** were charged for meals . . . As plaintiff himself suffered no actual harm as a result of the alleged retaliation, his retaliation claim must fail." (Dkt. No. 12-1 at 8, emphasis in original.) In opposition to the motion to dismiss, Plaintiff does not argue that the change in price affected him personally. Rather, he simply reiterates the allegations in the complaint. (Dkt. No. 14 at 9.) In sur-reply, however, Plaintiff states that the policy affects him because he has to pay more for his own meals. (Dkt. No. 16 at 3-4.)

Assuming for the purposes of this motion only that Plaintiff has alleged facts plausibly suggesting an adverse action, he has not alleged facts plausibly suggesting any causal connection between his protected conduct and the adverse action. Several factors may be considered in determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions. *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). Those factors include the temporal proximity between the protected activity and the alleged retaliatory act and statements by the defendant concerning his or her motivation. *Id.* (citing *Colon*, 58 F.3d at 872-73). "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id.*

Here, Plaintiff alleges that he filed an Article 78 proceeding regarding Eid festivities in June 2010. Plaintiff learned of the changed meal prices in July 2010. Thus, approximately one month elapsed between the protected conduct and the allegedly adverse action. The Second Circuit has held that the passage of "only six months" is sufficient to support an inference of a causal connection. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (citing *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 555 (2d Cir. 2001)). Thus, Plaintiff has pleaded facts plausibly suggesting temporal proximity.

Temporal proximity alone, however, does not establish a causal connection. The Second Circuit has held in the context of employment law that where "timing is the only basis for a claim of retaliation . . . an inference of retaliation does not arise," particularly where other adverse actions preceded the protected conduct. *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001). The Second Circuit routinely cites to employment cases when discussing retaliation in the prison law context. *See e.g. Espinal*, 558 F.3d at 129 (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)). Thus, it is appropriate to apply the *Slattery* rule here. Here, Plaintiff has not alleged any other basis for finding a causal connection between his Article 78 proceeding and the raising of meal prices. Moreover, Plaintiff has alleged that other allegedly adverse actions (namely, the issues with his pants length and the refusal to allow family participation in Eid el-Adha) preceded the filing of his Article 78 proceeding. Thus, Plaintiff has not alleged facts plausibly suggesting a causal connection between his protected conduct and the allegedly adverse action. Therefore, I recommend that the Court dismiss this claim with leave to amend.

### D.     Equal Protection Clause

Plaintiff claims that the rise in meal prices violated his right to equal protection.  (Dkt. No. 1 at 12.)  Defendants have not addressed this claim.  I will address it sua sponte pursuant to 28 U.S.C. § 1915(e)(2)(iii).

Plaintiff has alleged facts plausibly suggesting that he was treated differently from similarly situated individuals.  He alleges that he and other Muslim inmates are required to pay an adult price for a child visitor while other religions only pay fifty cents per child visitor. Viewing the facts in the light most favorable to Plaintiff and drawing all inferences in his favor, and without the benefit of briefing by Defendants, Plaintiff has alleged facts plausibly suggesting that this selective treatment was based on the impermissible consideration of Plaintiff's religion.

For the reasons stated above, I find that the complaint alleges facts plausibly suggesting that Defendants violated Plaintiff's right to equal protection by charging him a higher price for child visitors than other religious groups were charged.  Defendants have not argued that they are entitled to qualified immunity in regard to this claim.  (Dkt. No. 12-1 at 8.)  Therefore, I recommend that Defendants be directed to respond to this claim.

**ACCORDINGLY**, it is

 **RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 12) be **GRANTED** in part and **DENIED** in part.  It is recommended that the retaliation claim regarding meal prices be dismissed with leave to amend.  It is recommended that the following claims be dismissed without leave to amend: (1) the claims for damages against Defendants in their official capacities; (2) any claim asserted on behalf of other inmates and/or

their guests; (3) the First Amendment and RLUIPA claims for damages regarding the length of Plaintiff's pants; (4) the First Amendment, RLUIPA, and equal protection claims for damages regarding family participation in Eid el-Adha; and (5) any claim asserting a generalized right to visitation. It is recommended that Defendants be directed to answer the following claims: (1) the First Amendment claim for injunctive relief regarding the length of Plaintiff's pants; (2) the RLUIPA claim for injunctive relief regarding the length of Plaintiff's pants; (3) the First Amendment claim for injunctive relief regarding family participation in Eid el-Adha; (4) the RLUIPA claim for injunctive relief regarding family participation in Eid el-Adha; (5) the equal protection claim for injunctive relief regarding family participation in Eid el-Adha; and (6) the equal protection claim for damages and injunctive relief regarding meal prices.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).


Dated: March 15, 2013
      Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge